## PHOTOPLAY PUB. CO. v. LA VERNE PUB. CO., Inc., et al.

## SAME v. EASTLACK et al.

(Circuit Court of Appeals, Third Circuit. January 26, 1921.)

Nos. 2533, 2534.

1. **Trade-marks and trade-names ⟨⟩3(2)—"Photoplay" is descriptive term.**
   The word "Photoplay," which was adopted by the judges in a contest as the most descriptive single word to designate moving picture performances, is a descriptive term, which cannot be exclusively claimed as a trade-mark by a magazine devoted to moving picture productions.

2. **Trade-marks and trade-names ⟨⟩71—Use of descriptive term having secondary meaning is unfair competition.**
   Where a descriptive term, which cannot be claimed as a trade-mark, has acquired a secondary meaning as referring to the product of complainant, the use of that word by defendants with reference to a similar product is unfair competition, which may be enjoined.

3. **Appeal and error ⟨⟩1009(6)—Trial judge's findings, based on written testimony, not entitled to special weight.**
   The rule that appellate courts will generally accept the facts found by the trial court, which is based on the better opportunity of the trial judge to pass upon the credibility of witnesses, whom he sees and hears, does not apply in a suit where the testimony was taken by deposition and was uncontradicted.

4. **Trade-marks and trade-names ⟨⟩69—Intention unnecessary to establish unfair competition.**
   In a suit to restrain unfair competition, complainant need not prove that defendant intended to pass off his goods as those of complainant; the test being the commercial effect of the acts of defendant.

5. **Trade-marks and trade-names ⟨⟩68—Test of unfair competition is deception of inexperienced public.**
   Practices which would deceive the inexperienced public into confusing defendant's goods with those of plaintiff are unfair competition, though experienced wholesalers and retailers were not deceived thereby.

6. **Trade-marks and trade-names ⟨⟩70(3)—Use by defendant of title "Photo-Play Journal" held unfair competition.**
   Where complainant had an established magazine, known as "Photoplay Magazine," devoted to moving picture productions, the adoption by defendants of the name "Photo-Play Journal" for a similar magazine, which several witnesses testified had deceived them in mistaking defendant's magazine for plaintiff's, was unfair competition, and the further use of that name can be restrained.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Separate suits by the Photoplay Publishing Company against the La Verne Publishing Company, Incorporated, and others, and against Frank T. Eastlack and another, to restrain infringement of a trademark and unfair competition. Decree for defendants in each case (261 Fed. 428), and complainant appeals. Reversed, with directions.

MacDonald De Witt, of New York City, and Francis Shunk Brown, of Philadelphia, Pa., for appellant.

Morton Z. Paul and Joseph A. Boyer, both of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DAVIS, Circuit Judge. The complainant, a Delaware corporation, having its principal office in Chicago, publishes a monthly periodical called "Photoplay Magazine." The defendants publish a periodical called the "Photo-Play Journal." Both periodicals are devoted to moving pictures and matters connected therewith, and cover practically the same subject. The complainant filed bills against the defendants, charging them with infringing its registered trade-mark, "Photoplay," and with unfair competition, and prayed that they be restrained from using the word "Photoplay" as the title, or part of the title or name of their periodical, and from publishing and selling any periodical, magazine, or other publication under the name "Photo-Play Journal," or any name containing as a part thereof the word "Photoplay," and for such other and further relief as might seem proper. Identically the same questions are involved in both suits, which were tried and argued together, and both may be disposed of in one opinion, because the conclusions of law and fact are the same in both cases.

Complainant alleges that it and its predecessors have owned, printed, and published continuously since June, 1911, the "Photoplay Magazine," and in June, 1914, complainant had the word "Photoplay" registered as its trade-mark; that since June, 1916, the defendants have been publishing and selling their periodical under the title "Photo-Play Journal," thus using the distinguishing word, "Photoplay," of complainant's title, as a part of their title, so arranged as to copy and colorably imitate the complainant's trade-mark in such manner as to cause confusion and mistake to purchasers, advertisers, and the public generally.

The defendants deny infringement of complainant's rights, and aver that the periodicals are entirely unlike in name, shape, size, general appearance, and color scheme, and that no confusion, deception, or danger to complainant's business or trade can result from the adoption of the word "Photo-Play" as part of the name of their periodical.

[1] Under the pleadings and proofs, the learned trial judge held that the word "Photoplay" is a descriptive term, and not a proper subject-matter of a registered trade-mark. The word was coined in a contest for a "new one-word name for a 'moving picture show.'" The object of the Essanay Film Manufacturing Company in starting the contest was "to select a name which would be descriptive of the entertainment given in motion picture theaters." The company selected three "men of acknowledged authority in moving picture affairs" as judges, to whose decision were submitted more than 2,500 words. They selected the word "Photoplay" as being "more closely descriptive * * * than any other of the long list submitted." In announcing their decision, the judges stated that they were influenced in their selection "by the necessity of adopting a term which would be easily remembered, descriptive in character, simple, and appropriate." The judges recognized in the word "Photoplay" a term "more closely descriptive of the entertainment given in motion picture theaters * * * than in any other of the long list submitted." The fact of its selection called attention to the word, and to-day it is used entirely by some persons in the film and moving picture business,

instead of the words "moving pictures," "moving picture shows,' "movies," etc. The word denotes the reproduction of a play by means of photography. It is purely descriptive of that art. The plaintiff appropriated it as part of the title of its publication, which is devoted to the art to which the word relates. Being a trade word, descriptive of the art, it was publici juris, may not be exclusively appropriated, and is not the proper subject of a registered trade-mark. 38 Cyc. 708, 711, 722; Canal v. Clark, 80 U. S. (13 Wall.) 311, 20 L. Ed. 581; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; Corbin v. Gould, 133 U. S. 308, 10 Sup. Ct. 312, 33 L. Ed. 611; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Howe Scale Co. v. Wyckoff-Seaman & Benedict, 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972. We agree with the learned trial judge, in so far as he based his decree upon the right to an exclusive use of the word by the plaintiff on the ground of a registered trade-mark.

[2] The complainant bases its charge of unfair competition upon a secondary meaning, which it alleges the word has acquired. The word, by early and constant use, it contends, became associated with and came in time to mean and designate its periodical only, and that, in consequence of the adoption of this word as part of the title of defendants' publication, confusion and deception have resulted. If this contention is true, relief should be granted. The learned trial judge reached this conclusion, for he found that the complainant has the exclusive right to the use of the title adopted for its publication, so far as that title has come to be associated with and to designate by name its particular publication, and it has the further right to protect the title against any other publication being imposed intentionally or otherwise upon purchasers as complainant's publication.

[3] But he found that there had not been in the use of the word, "Photoplay," any purpose or intention on the part of defendants to deceive or palm off their publication for that of the complainant, and that the defendants' use of the word, "Photo-Play," had not "been such as there would be any reasonable expectation that any one, knowing of and wishing to buy the publication of the plaintiff, would be led into mistaking one publication for the other." Whether or not there has been confusion and deception is a question of fact, upon which the decision of this case depends. Appellate courts, as a rule, accept the facts as found by the trial court. This is a wise rule, for the trial judge sees the witnesses and hears them testify, and so is better qualified to pass upon their credibility and the truth of conflicting testimony from which ultimate facts must be found. When, however, as in the case at bar, the testimony, which was taken by deposition here and there in many parts of the country, is uncontradicted, and the witnesses were never before the trial judge, the rule and reason therefor disappear.

[4] In actions of unfair competition, where the goods of one are passed off as those of another, it is not necessary for the complainant to prove that the defendant intended to pass off his goods as those of

the complainant. The question is: What is the commercial effect of what he is doing? If the effect is to pass off his goods for those of the complainant, his good intentions or honesty of purpose is not a defense. Intention, however, is not immaterial, for it would be difficult, though not impossible, for a defendant to satisfy the court that his fraudulent conduct would not have the effect that it was intended to have. Wholesalers and retailers may not be deceived, while the purchasing public may be. Many tests may be adopted as to what is calculated to deceive, or what the commercial effect of the thing will be; but the all-sufficient test is whether or not, in the light of experience, the thing has actually confused and deceived. Whether or not there is a reasonable basis for confusion and deception, in the absence of actual commercial test, is a matter of conjecture.

[5] What might fully protect experienced wholesalers and retailers might be wholly inadequate to protect the inexperienced public for whose protection courts are so sensitive and careful. Whatever may be theoretically thought of the difference between the two publications, the proofs, establish, we think beyond doubt, that there was actual and considerable confusion in the public mind. A number of witnesses testified that the defendants' publication had been passed off on them for that of the complainant's. This number was not large when compared with the entire circulation of the publication, but it was quite large when the difficulty of securing such testimony is considered. The testimony of these witnesses stands uncontradicted and unimpeached. The only effort the defendants made to impeach it was to show that other persons, mostly experienced in the trade, at other times and places, had not been confused or deceived.

[6] "Photoplay" is the catchword in the title of the complainant's publication, under which it became popular and built up a large circulation, and the defendant, knowing this, adopted the catchword of the title and added to it a distinguishing noun, "Journal," in place of "Magazine," which in fact does not distinguish. Confusion and deception may readily happen—indeed, may be expected—if the catchword of the defendants' title is used as descriptive of the next word, which, though different, conveys substantially the same idea, when used in describing a periodical of the same art. Defendants, like complainant, framed the title of their publication of two words. It is the same word, "Photo-Play." The fact that defendants have separated the first part of the word by a hyphen from the latter part, which begins with a capital, does not avoid confusion, for this attempted distinction cannot be detected in pronunciation, and may not be seen by purchasers. They substituted the word "Journal" for "Magazine." This makes little difference, if any, because the two words convey substantially the same idea, when used in describing a periodical of the same particular art. They have similar definitions and are closely synonymous. To illustrate, Scribner's Magazine is popularly called "Scribner's," though it is entitled "Scribner's Magazine." If another Scribner were to come into the field, and issue a periodical of this same character, entitled "Scribner's Journal," it is inconceivable that there would not be confusion and deception in the public mind.

We are of the opinion that there is such similarity in the title of the two publications, which the defendants have created by adopting precisely one word of the complainant's title and the synonym of the other, as to cause confusion and deception in the public mind. Relief should therefore be granted. The decree of the court below will accordingly be reversed, with direction to reinstate complainant's bill and enter decree in conformity with this opinion.