## POPULAR MECHANICS CO. v. FAWCETT PUBLICATIONS, Inc.

No. 984.

District Court, D. Delaware.

Jan. 10, 1935.

Edward S. Rogers and William T. Woodson, both of Chicago, Ill., and Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., for plaintiff.

Chester W. Johnson, of Minneapolis, Minn., and Arthur G. Logan, of Wilmington, Del., for defendant.

NIELDS, District Judge.

In its bill of complaint Popular Mechanics Company charges the defendant, Fawcett Publications, Inc., with infringement of plaintiff's trade-mark and with unfair competition. A preliminary injunction was denied. (D. C.) 1 F. Supp. 292, 294. The matter is now for determination after hearing the evidence. The parties have been in litigation since August, 1928, with respect to defendant's right to the use of the word "Mechanics" in the title of its magazine.

Plaintiff was incorporated in 1902 under the laws of Illinois. Its principal office is in Chicago. Since incorporation, it has published a magazine under the title "Popular Mechanics." It publishes no other magazine. The first issue appeared in January, 1902. For the first twelve months it was published as a weekly, but since January, 1903, as a monthly magazine. From the beginning the distribution of plaintiff's magazine showed a gradual increase. It has established a large trade among those who have an interest in mechanics, including boys, pupils attending trade schools, men with mechanical hobbies, and mechanics generally. It is nontechnical, avoiding scientific terms and giving practical instruction. At the present time, its average monthly sales at news stands and by subscription in the United States and Canada is something over 400,000 copies. 40,000 copies of each issue are sold in foreign countries. Plaintiff has spent approximately $4,000,000 in advertising. November 17, 1914, plaintiff registered in the United States Patent office the trade-name or mark "Popular Mechanics." The trade-mark is printed in a "box" with a blue border, white background, and red letters. The key word of the trade-mark is "Mechanics." Plaintiff's magazine was the first of its kind in the field. There was no other magazine of similar nature either as to title or appearance. It possesses unusual merit and met with public favor.

The first issue of defendant's magazine was an "ashcan" edition in April-May, 1928, under the title "Modern Mechanics." The first regular edition was published in November, 1928, under the title "Modern Mechanics and Inventions." After this suit was instituted, defendant changed the spelling of the word "Mechanics" to "Mechanix." The title of defendant's magazine is printed without an inclosing border. "Cut-out" letters are used with black outline, the letters showing white against varied colored backgrounds. They are not of uniform size. At the upper left-hand corner of the cover there was for some time printed in capital letters, though in relatively small type, the words "A Fawcett Publication." Since the bringing of this suit, defendant has dropped from its covers these words. The magazine now appears as a publication by Modern Mechanix Publishing Company. Since first published, until about two years ago, defendant's magazine sold for 25 cents, the same price as plaintiff's. About two years ago the price was reduced, and the cover now bears a conspicuous tab "Now 15¢." Its circulation is approximately 130,000 copies a month.

The defendant filed an application in the United States Patent Office to register the name "Modern Mechanics" as a title for its magazine and later a second application to register the title "Modern Mechanics and Inventions." To each of these applications plaintiff filed an opposition. The two proceedings were consolidated. The basis of the opposition was the confusing resemblance between "Popular Mechanics" and "Modern Mechanics." The Patent Office and the Court of Customs and Patent Appeals sustained the opposition, and registration was denied. Fawcett Publications, Inc., v. Popular Mechanics Co. (Cust. & Pat. App.) 58 F.(2d) 838.

The gravamen of plaintiff's charge is that defendant palms off its magazine for

that of the plaintiff; that customers are deceived into buying defendant's magazine believing they are buying plaintiff's; that the word "Mechanics" after thirty years' continued use by plaintiff has acquired a secondary meaning when applied to a magazine, such secondary meaning being the publication of plaintiff; and that any one other than plaintiff using the word "Mechanics" in connection with a like magazine trespasses upon the legal rights of plaintiff. Defendant, on the other hand, contends that the word "Mechanics" is used in the titles of the two magazines as a generic term, and is purely descriptive of the contents of the publications, and that there is no other word in the English language to correctly describe the contents of these publications.

In disposing of plaintiff's motion for preliminary injunction, this court said: "A trade-name that merely performs the function of descriptiveness may yet be used in trade for such a length of time and in such a manner that it may also come to perform the additional function of indicating origin. In other words, in the mind of the purchasing public, the trade-name may have acquired a secondary meaning connoting a particular producer or vendor, or connoting superior quality or excellence in an article. Has plaintiff's trade-mark acquired such secondary meaning?"

This question must now be answered in the affirmative. The depositions and testimony offered at the trial establish that the words "Popular Mechanics," and indeed the single word "Mechanics," have come to mean and designate plaintiff's magazine.

Both magazines are what are termed in the trade "pulp" magazines. They are of approximately the same size. Like all such magazines, the covers are multi-colored and very flashy. Each has a design or blurb on the front cover. In all respects, each conforms to the latest rules of popular advertising in catching the attention of the buyer with bright colors and a general indication of the contents of the magazine by name and blurb.

It is the practice at news stands to display magazines within easy reach of customers so that they can serve themselves. Confusion on the part of readers of the magazine also is established by numerous letters received by plaintiff through the mails. Many of these letters are addressed to Modern Mechanics and mailed to the street address of the plaintiff in Chicago. The record is replete with instances of confusion on the part of purchasers desiring plaintiff's magazine and receiving defendant's in its stead.

In October, 1929, an inquiry was sent to plaintiff in Chicago, "Can you supply me with a back number of Modern Mechanic of April 1929?" J. J. Sullivan writes to plaintiff in Chicago, "On last July I subscribed for Popular Mechanics through one of your Washington agents." The subscription order in evidence shows that Sullivan in fact subscribed for "Modern Mech."

In February, 1931, George E. Daniel writes to Fawcett Publications, Inc., the defendant, "Please decrease our order for 'Popular Mechanics'—3. Let this take effect immediately." December 21, 1932, defendant writes to plaintiff, "We are enclosing an order received from Mrs. L. W. Malloy, 361 St. Frances Ave., Redwood City, Cal. The envelope is addressed to Modern Mechanix but the check is made payable to Popular Mechanix—no doubt, it is for you." January, 1932, J. E. Cunninghame, of Ontario, writes plaintiff suggesting that he would like to have some of his "new ideas of making and doing things * * * published in your magazines, 'Popular Mechanics' and 'Modern Mechanics.' * * *" W. H. Morgan addresses a letter to "Raymond F. Yates," care of plaintiff in Chicago. Yates is not in the employ of plaintiff but on the editorial staff of Modern Mechanics.

Oliver C. Schroeder, plaintiff's witness, testified:

"Q. Now, do many people just help themselves to magazines and then pay you for them? A. Yes, most of my customers do that. * * *

"Q. And it is the general practice, isn't it, to ask for Popular Mechanics by the name 'Popular Mechanics'? A. Well, a lot of people have for years said, 'Is the Mechanics in?'

"Q. A lot of people? A. Lots of people.

"Q. What do you mean by a lot of people? A. Maybe fifty per cent. of them."

Fred Daugherty, for ten years a publisher's representative in Chicago, testified:

"Q17. In calling on dealers do you ever refer to Popular Mechanics as Mechanics? * * * A. Well, most generally I question the dealer, 'How many Mechanics have you on hand,' that is part of my work. I refer to it more that way than I do Popular Mechanics."

Thomas F. Hannon, Manager of Western News Company at Chicago, testified:

"Q7. Can you give us a rough estimate of the number of magazines that are distributed by your company? A. Oh, from 300 to 500 different magazines, I guess.

"Q8. Do you distribute a publication put out by the Popular Mechanics Company? A. Yes.

"Q9. And what is the name of that magazine? A. Popular Mechanics Magazine. * * *

"Q24. In your organization by what name is Popular Mechanics generally known? * * * A. As Mechanics Magazine, Mechanics,—just plain Mechanics.

"Q25. Is it customary in your organization to speak of the magazine simply as Mechanics? A. Yes, sir."

Nicholas Parloma, general manager of Times Building News Stand, Forty-Second and Broadway, said to be the largest independent news stand in the world, testified:

"Q. Do you handle a publication at your news stand put out under the title 'Popular Mechanics'? A. Yes, sir. * * *

"Q. Do you ever hear the publication 'Popular Mechanics' abbreviated to merely 'Mechanics'? * * * A. Plenty of times. * * *

"Q. Do you ever have customers ask for 'Popular Mechanics' as merely 'Mechanics'? * * * A. Plenty of times. I just answered that.

"Q. When you have a customer ask for a copy of 'Mechanics,' what do you give him? A. 'Popular Mechanics.' * * *

"Q. Do you handle a publication put out under the name or title 'Modern Mechanics'? A. Yes.

"Q. Have you ever had customers buy 'Modern Mechanics' and return those magazines saying that they wanted 'Popular Mechanics'? * * * A. Plenty of times. I have had plenty of customers come back with that, and even had them come back the next day and the day after.

"Q. What would they say when they would bring back the 'Modern Mechanics'? A. They would tell 'Since when did they change the name to 'Modern Mechanics'? This is not the same magazine we have always been getting."

Similar testimony could be quoted at great length.

Defendant endeavors to explain the confusion between the two magazines by the assertion that confusion in magazine and periodical distribution is not uncommon but is "of fairly common occurrence," and attributes the confusion proved to carelessness and other kindred reasons. This explanation falls far short of accounting for the actual confusion shown by this record. In Photoplay Pub. Co. v. La Verne Pub. Co. (C. C. A. 3) 269 F. 730, 733, in a similar case the court said:

"Whatever may be theoretically thought of the difference between the two publications, the proofs establish, we think beyond doubt, that there was actual and considerable confusion in the public mind. A number of witnesses testified that the defendants' publication had been passed off on them for that of the complainant's. This number was not large when compared with the entire circulation of the publication, but it was quite large when the difficulty of securing such testimony is considered. The testimony of these witnesses stands uncontradicted and unimpeached."

■ The defendant entering the magazine field was under obligation to distinguish its magazine from plaintiff's. It has failed. It not only selected the key word "Mechanics" of the title of plaintiff's magazine for a key word in the title of its own magazine, but applied that title to a magazine containing similar subject matter and of practically the same shape, size and get-up, knowing full well that it would be sold through the same retail outlets to the same class of purchasers. Photoplay Pub. Co. v. La Verne Pub. Co. (C. C. A. 3) 269 F. 730.

■ The record furnishes no foundation for the defense of laches. Before the first copy of defendant's magazine was published, plaintiff, learning of the proposed use of the title "Modern Mechanics," notified defendant that the use of that title would be objectionable and would produce confusion. Plaintiff even suggested to defendant other titles for its new magazine. It has consistently and continuously maintained its original position and asserted its rights in the Patent Office and in the courts. Although relief to which plaintiff has shown itself entitled may inflict a hardship upon defendant, such relief should not be denied. In Yale Electric Corporation v. Robertson (C. C. A.) 26 F.(2d) 972, 974, the court said: "The defense of laches needs no more than mention. The plaintiff has gone on in the face of the defendant's opposition from the very outset. If its persistence now lays a heavy burden on it, it is of its own making. It would be an easy escape from the consequences of a wrong to assert that one has

grown so old in its practice as to make any change painful."

Assuming the word "Mechanics" be a descriptive word and not the subject of a valid trade-mark, I am satisfied the word from thirty or more years of continuous use by plaintiff has acquired a secondary signification indicative of plaintiff's magazine, and as such is entitled to protection as much as an arbitrary or fanciful word. The plaintiff is entitled to a decree enjoining the defendant from using the word "Mechanics" or "Mechanix" as part of the name of its magazine, and for an accounting.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Equity Rule 70½ (28 USCA § 723).