FAWCETT PUBLICATIONS, Inc. v. POPULAR MECHANICS CO. *

No. 5751.

Circuit Court of Appeals, Third Circuit.

Oct. 18, 1935.

Chester W. Johnson and Dan J. O'Connell, both of Minneapolis, Minn. (Marvel, Morford, Ward & Logan and Arthur G. Logan, all of Wilmington, Del., of counsel), for appellant.

Edward S. Rogers, William T. Woodson, and James H. Rogers, all of Chicago, Ill. (Hugh M. Morris and Alexander Nichols, both of Wilmington, Del., and E. K. Lundy, of Chicago, Ill., of counsel), for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is a suit for infringement of a trade-mark and unfair competition.

The plaintiff, the Popular Mechanics Company, has published its magazine, "Popular Mechanics," since 1902. The name "Popular Mechanics" was registered as a trade-mark in 1914.

As the title indicates, the subject-matter of the magazine is concerned with a popular and elementary portrayal of mechanical and inventional progress. Its narrative is concise and "catchy," perhaps inclining to dramatic coloring. It had a circulation of approximately half a million copies each month.

In 1928, the defendant, Fawcett Publications, Inc., introduced a competitive magazine in the field and published it under the name, "Modern Mechanics and Inventions." The words "Modern Mechanics" of the title were printed across the face of the magazine in large, bold type and the words "and Inventions" in smaller type underneath the key words.

It was a monthly magazine and its subject-matter was similar to that contained in the plaintiff's "Popular Mechanics." The defendant sought to register the name of its publication as a trade-mark, but the application was contested by the plaintiff and denied because of the similarity of the defendant's title, "Modern Mechanics and Inventions," to the plaintiff's "Popular Mechanics." Fawcett Publications, Inc., v. Popular Mechanics Company (Cust.&Pat.App.) 58 F.(2d) 838.

The defendant continued to publish its magazine with the same title over the protest of the plaintiff. The plaintiff commenced this suit in June, 1932. In August, the defendant's "Modern Mechanics and Inventions" was taken over by another corporation, the Modern Mechanix Publishing Company, and thereafter was published under the name of "Modern Mechanix and Inventions." Its circulation was approximately 100,000 copies per month.

The bill of complaint avers that the title of the defendant's magazine infringes the plaintiff's trade-mark, "Popular Mechanics"; that the defendant attempts to imitate the plaintiff's magazine and to deceive and confuse the public; that after thirty years of use, the words "Popular Mechanics" or "Mechanics" have acquired a secondary meaning, when applied to a magazine, indicating the plaintiff's publication. The defendant's answer denies the averments of the complaint.

At the hearing before the District Court, several witnesses testified to the confusion of Popular Mechanics and Modern Mechanics by the public at retail news stands from which both magazines were principally distributed. Purchasers bought Modern Mechanics by mistake and returned it for Popular Mechanics. Wholesale magazine distributors who only handled Popular Mechanics testified that unsold copies of Modern Mechanics were sent to them by dealers as returns for credit. There was testimony also that readers confused the magazines in corresponding with the plaintiff or defendant.

After final hearing, the District Court, 9 F.Supp. 474, 478, granted an injunction to the plaintiff and said in its opinion: "Assuming the word 'Mechanics' be a descriptive word and not the subject of a valid trade-mark, I am satisfied the word from thirty or more years of continuous use by plaintiff has acquired a secondary signification indicative of plaintiff's magazine, and as such is entitled to protection as much as an arbitrary or fanciful word. The plaintiff is entitled to a decree enjoining the defendant from using the word 'Mechanics' or 'Mechanix' as part of the name of its magazine, and for an accounting."

The plaintiff itself has stated the question on this appeal to be: "Where a name has acquired a secondary meaning identifying an established and popular magazine, is it unfair competition for a rival publisher, with notice, to appropriate such name or the salient part of it as the title of a competing magazine where such appropriation results in substantial confusion between the two publications and the passing off of one as and for the other?"

That the words, "Popular Mechanics," may be registered as a trade-mark is doubtful because of their descriptive nature, and, as a matter of fact, the plaintiff has not relied on the validity of its trade-mark in this appeal. Popular Mechanics has been used successfully and continuously as plaintiff's title for many years. The words are of great value, and while they are generally descriptive, the plaintiff has used them so continuously and successfully in this field that they have come to indicate its magazine, which is a leader of its sort.

But what the plaintiff wants is the right to the exclusive use of its key word "Mechanics" when it is applied to a magazine. The defendant insists that it cannot acquire that right and that the plaintiff is seeking a monopoly of this type of magazine since the word "Mechanics" is uniquely appropriate in describing its contents. It is doubtful if "Mechanics" is the only word the can be used in the title of a successful magazine in this field. The decision in this case, however, is not based upon the ownership of a registered trade-mark, but upon "unfair competition."

 The law applicable to this case was clearly stated by Judge Woolley in Barton v. Rex-Oil Company (C.C.A.) 2 F.(2d) 402, 404, 40 A.L.R. 424, as follows:

"The law governing trade-marks is but a branch of the law regulating trade competition. The policy of this law is to foster, not to hamper, competition and

it permits a monopoly in the use of a trade-mark only when it has become the absolute and exclusive property of the first user—good against the world. A merely descriptive name can never become such property; * * * and the utmost the first user of such a name after it has acquired a secondary meaning can insist upon is that no one shall use it against him in an unfair way. Accordingly, the second user becomes an infringer only when he makes an unfair use of the mark. Not any competition, but only unfair competition on the part of such user is actionable. * * *

"A technical trade-mark being treated as property, infringement thereof carries with it the presumption of fraud; but where no exclusive right to the use of a trade-mark exists, fraud—unfair competition—in the use of the mark by another must be proved, * * * and when proved, the utmost that the courts can do for the relief of the first user is to enjoin not the use of the trade-mark but the unfair method of its use. Thus it appears that while the first selection of a descriptive name which later has acquired a secondary meaning does not carry with it an exclusive right to its use, yet the first user has a right to be protected against one who subsequently so uses the name as to deceive the public and thereby take his trade from him; and in affording him this protection the later comer, when using the name, will be required to distinguish his goods and enlighten the trading public. * * * In this way the courts preserve to the first user his superior right to the mark and, what is more important, guard the public."

The plaintiff insists that its rights in "Mechanics" entitles it to an injunction for the exclusive use of that word on the principles disclosed in the cases of Photoplay Publishing Co. v. La Verne Pub. Co. (C.C.A.) 269 F. 730, and Barton v. Rex-Oil Company (C.C.A. 3) 2 F.(2d) 402, 40 A.L.R. 424; Id. (C.C.A.) 29 F.(2d) 474.

In the Photoplay Case, the complainant had published the magazine "Photoplay" for a number of years. The defendant began publishing a similar magazine which it called the "Photo-Play Journal." As the titles indicate, both were devoted to moving pictures and matters connected therewith. The court held that the defendant's use of the variation, "Photo-Play," caused confusion to the public which constituted unfair competition and entitled the plaintiff to an injunction forbidding the use of the simulation of the word "Photoplay."

The court granted the same relief in the Barton Case, commonly called the Dyanshine Case, for the same reason. (C.C.A.) 29 F.(2d) 474, 475. The plaintiff had placed a shoe polish on the market and it proved to be highly successful. The polish was labeled "Dyanshine." The defendant commenced manufacturing a product which it called "Dye & Shine." In enjoining the use of these words to designate the defendant's product, the court said: "The law affords the remedy of injunction against the use of words which in instances such as this have acquired only a secondary meaning when those words are used as the name of a product as distinguished from their use in describing it."

It may be that the decrees went too far in absolutely enjoining the use of the descriptive words in the Photoplay and Dyanshine Cases for the reason that being descriptive words they could not be exclusively appropriated.

It is easy to forget that it is not competition but unfair competition which entitles the user of a descriptive word with an acquired secondary meaning, to relief. Such a word belongs to the public in its primary sense. Equity will not free an injured user from competition, but only from unfair competition which enables a competitor to deceive the consuming public and sell his products for those of the first user.

A descriptive word, name, or title, which cannot be registered as a trade-mark and belongs to the public, cannot be used exclusively. Delaware & H. Canal Company v. Clark, 13 Wall. (80 U.S.) 311, 20 L.Ed. 581; Elgin National Watch Company v. Illinois Watch Case Company, 179 U.S. 665, 21 S.Ct. 270, 274, 45 L.Ed. 365; Standard Paint Company v. Trinidad Asphalt Company, 220 U.S. 446, 31 S.Ct. 456, 460, 55 L.Ed. 536; Warner & Company v. Eli Lilly & Company, 265 U.S. 526, 44 S.Ct. 615, 616, 68 L.Ed. 1161. If it were otherwise, it would be afforded the same protection as a registered trade-mark.

The Supreme Court said in Warner & Co. v. Eli Lilly & Co., supra: "A

name which is merely descriptive of the ingredients, qualities or characteristics of an article of trade cannot be appropriated as a trade-mark and the exclusive use of it afforded legal protection. The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product."

In the Elgin Watch Company Case, supra, the court said: "If a plaintiff has the absolute right to the use of a particular word or words as a trademark, then, if an infringement is shown, the wrongful or fraudulent intent is presumed, and although allowed to be rebutted in exemption of damages, the further violation of the right of property will nevertheless be restrained. But where an alleged trademark is not in itself a good trademark, yet the use of the word has come to denote the particular manufacturer or vendor, relief against unfair competition or perfidious dealing will be awarded by requiring the use of the word by another to be confined to its primary sense by such limitations as will prevent misapprehension on the question of origin. In the latter class of cases such circumstances must be made out as will show wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of."

■ To afford a ground for relief for unfair competition, however, it is required that the ordinary or common buyer, exercising the care of a reasonably prudent person, be deceived. The Supreme Court stated the rule in McLean v. Fleming, 96 U.S. 245, 255, 24 L.Ed. 828, as follows: "A court of equity will not interfere, when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other. Where the similarity is sufficient to convey a false impression to the public mind, and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters, it is sufficient to give the injured party a right to redress, if he has been guilty of no laches."

■ Generally, the question of whether or not the defendant has been guilty of unfair competition is one of mixed law and fact and is for the trial court to determine. The mere resemblance of words used by two competitors is not sufficient to establish unfair competition. Its essence consists in the sale of the goods of one manufacturer or vendor for those of another or under such conditions as will lead the purchaser to think that they are the goods of the other. Sears, Roebuck & Co. v. Elliott Varnish Company (C.C.A. 7) 232 F. 588, certiorari denied 242 U.S. 635, 37 S.Ct. 19, 61 L.Ed. 539; Standard Paint Company v. Trinidad Asphalt Company, supra. For example in the latter case, the Supreme Court said: "The only imitation by the asphalt company of the roofing of the paint company is that which exists in the use of the word 'Rubbero,' and this only by its asserted resemblance to the word 'ruberoid.' To preclude its use because of such resemblance would be to give to the word 'Ruberoid' the full effect of a trademark, while denying its validity as such. It is true that the manufacturer of particular goods is entitled to protection of the reputation they have acquired against unfair dealing, whether there be a technical trademark or not; but the essence of such a wrong consists in the sale of the goods of one manufacturer or vendor for those of another. Elgin National Watch Co. v. Illinois Watch Co., supra. Such a wrong is not established against the asphalt company. It does not use the word 'Rubbero' in such a way as to amount to a fraud on the public."

■ While there is no evidence that the defendant attempted to palm off its magazine for that of the plaintiff, there was substantial evidence of confusion on which the trial court based a finding of unfair competition.

But it should not be overlooked that "Mechanics" is not the title by which the plaintiff displays its magazines to the world. "Popular Mechanics" is its title and with that the plaintiff by long, continuous use has built up its success. Despite statements to the contrary, both words of the title are of equal dignity and importance and they have always been used together without distinguishing emphasis. On the other hand, the defendant has used "Modern Mechanics" as the important part of the title to its magazine and has placed the remainder of it, the words, "and Inventions," in smaller type beneath the other part.

The decree of the District Court gives the plaintiff the exclusive use of a common, descriptive word. In so doing, it goes too far. While defendant may use the descriptive word "Mechanics" in the title of its magazine, it must do so in such manner as will distinguish it from plaintiff's magazine and thus prevent deception to the purchasing public.

Accordingly, the decree is reversed and the case is remanded to the District Court for further proceedings in accordance with this opinion.

———◆———

*Rehearing denied Jan. 13, 1936.