**WARNER PUBLICATION, Inc., v. POPULAR PUBLICATIONS, Inc.**

**No. 168.**

Circuit Court of Appeals, Second Circuit.

Feb. 8, 1937.

Swiger, King & Chambers, of New York City (Edwin J. Harragan, of New York City, of counsel), for appellant.

Schultz Brothers, of New York City (Joseph Schultz and Henry Edward Schultz, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff, publisher of a magazine entitled "Ranch Romances," brought suit for an injunction and accounting against the defendant, publisher of a magazine entitled "Rangeland Romances." Both are within the so-called "pulp" magazine field. The bill of complaint charges, in a first count, infringement of a registered trademark, and, in a second count, unfair competition. Both parties are New York corporations. The bill was filed August 1, 1935, and was answered August 20th with general denials. No motion to obtain an injunction pendente lite was made until March 11, 1936. The motion then made was granted by an order, resettled on June 10, 1936, restraining the defendant from publishing or selling "a magazine or periodical bearing the title 'Rangeland Romances' in any form, or bearing any other title which is in simulation or imitation of plaintiff's trade-mark and title 'Ranch Romances.'"

The appellant contends that the words "Ranch Romances" do not constitute a valid registered trade-mark because they are descriptive of the nature and contents of the magazine upon which the plaintiff uses them as a title. The contention is well taken. By the terms of the statute, "No mark which consists * * * merely in words or devices which are descriptive of the goods with which they are

914

used, or of the character or quality of such goods * * * shall be registered under the terms of this Act [subdivision of this chapter]." 33 Stat. 726, 15 U.S.C.A. § 85 (b). The descriptive character of the title "Ranch Romances" is not only indicated by the subtitle "Love Stories Of The Real West," but is expressly stated in affidavits by the editor, who says that the magazine has always been "devoted to romantic stories of the West," and the stories published "have been action stories involving romantic interest set on ranges and ranches of the traditional West." We think the words "Ranch Romances" are no less descriptive than were other magazine titles which have been held invalid trade-marks, namely, "Photoplay Magazine," "College Humor," "Popular Mechanics." Photoplay Pub. Co. v. La Verne Pub. Co. (C.C.A.3) 269 F. 730; Collegiate World Pub. Co. v. Du Pont Pub. Co. (D.C.) 14 F.(2d) 158, affirmed (C.C.A.7) 25 F.(2d) 1018; Fawcett Publications v. Popular Mechanics Co. (C.C.A. 3), 80 F.(2d) 194, 196, dictum. The court below cited in support of its ruling Vogue Co. v. Brentano's (D.C.S.D.N.Y.) 261 F. 420 and New Metropolitan Fiction v. Dell Pub. Co., 57 App.D.C. 244, 19 F.(2d) 718. Both are distinguishable from the case at bar. Even if the title "Vogue" might be thought descriptive of those portions of the magazine devoted to fashions in women's dress, it could not be deemed descriptive of other portions, which dealt with architecture, art, the stage, and home decoration. As Judge Knox' opinion states, the plaintiff's use of the word was "arbitrary and somewhat fanciful" rather than descriptive. The other cited case did not involve the validity of a registered trade-mark composed of descriptive words, but merely whether registration of the title "Modern Marriage" was precluded by the prior registration of a too similar title. In so far as the injunction appealed from rests upon the plaintiff's registered title as a valid trade-mark, it cannot be sustained.

■■■ The injunction was also rested upon findings that the title had acquired a secondary meaning denoting the plaintiff's magazine and that the defendant was engaging ·in unfair competition. Although there was no diversity of citizenship, we think the court had jurisdiction to consider the charge of unfair competition under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

Where a substantial federal question is raised by the allegations, jurisdiction is established, whatever the decision on the merits may be, and the court retains jurisdiction to dispose of a nonfederal question inseparably connected with the federal ground of action. Here the two causes of action grow out of the same facts; though the bill of complaint is divided into two causes of action, they are inseparably connected within the doctrine of the Hurn Case. · Indeed, the second count realleges every allegation of the first. We cannot accept the appellant's contention that,· because pleaded separately instead of being commingled in a single count, jurisdiction of the nonfederal ground must fail on dismissal of the federal ground. See Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. There federal jurisdiction was invoked under the federal anti-trust laws. The answer set up a counterclaim nonfederal in character but arising out of the same transaction. Although the bill was dismissed on the merits, jurisdiction remained to dispose of the counterclaim. The question whether the preliminary injunction can be sustained on the ground of unfair competition is properly before us.

■■■ "Ranch Romances" has been published by the plaintiff or its predecessors since 1924. The defendant entered the "pulp" magazine field' in 1930 and is the publisher of some twenty periodicals besides the one under attack, the first issue of which appeared in April, 1934. The defendant's affidavit states that the title "Rangeland Romances" was chosen because it would describe the character of the stories to be published in its new magazine. We can find no evidence whatever to cast doubt on the defendant's good faith, or to justify imputing to it the alleged design to palm off its magazine as the plaintiff's. There is no evidence that confusion between the two has ever existed in the mind of any person. All that the plaintiff offers is the prediction of three of its officers that confusion "undoubtedly will result." If their opinion so expressed were supported by facts sufficient to establish a probability, a preliminary injunction might be justified, but no such facts are shown here. To the contrary, the magazines are widely unlike in external appearance. "Rangeland Romances" is printed straight across in yellow letters, narrowly edged with red, upon a dark background;

"Ranch Romances" is printed in letters wholly red upon a white background, the word "Romances" curving upward to the right, and above in prominent black lettering is the subtitle "Love Stories Of The Real West." To the eye there is not the slightest danger of deception; nor is there phonetically any similarity between the titles. In meaning only are the titles nearly alike; but in magazine titles, and particularly in the "pulp" magazine field, descriptive titles so crowd one another that resemblance in meaning is inevitable. The defendant has as good a right to a descriptive title as has the plaintiff. All that the plaintiff can demand is that defendant shall use its title in such a manner as to distinguish its magazine from the plaintiff's and thus prevent deception of the purchasing public. Fawcett Publications v. Popular Mechanics Co. (C.C.A.3) 80 F.(2d) 194, 199. So far as appears from the proofs offered on the motion for a preliminary injunction, it has done so.

Objection is made to the use of a title having two words beginning with the letter "R." The plaintiff's affidavits disclose that the plaintiff has fixed upon the letters "R R" as a symbol of its magazine and has distributed among its readers insignia bearing those initials. But it also appears that in another litigation against the publisher of a magazine entitled "Romance Range" the plaintiff disclaimed the exclusive use of the letters "R R" in the magazine field and consented to publication, if the title should be changed to "Romantic Range," which was done. Still another competitor publishes a pulp magazine under the title "Romance Round-Up." That the defendant's title is also composed of two words beginning with the letter "R" can scarcely be thought evidence of deceptive imitation. Nor do we think that the defendants are guilty of unfair imitation in choosing to use an "R" with a "tail." The plaintiff's letter is patently different, in that the elongated member, instead of slanting down over the background as does the defendant's curls sidewise and upward so that it encroaches upon the neighboring letter. Here again there is evidence neither of actual nor of probable confusion in the mind of purchasers.

For the foregoing reasons we think the preliminary injunction was improvidently granted. It is unnecessary to consider the appellant's further contention that the plaintiff's delay in applying for it was so great as to require a denial of the motion under the circumstances shown.

Order reversed.