MAGAZINE PUBLISHERS, Inc., v. ZIFF-DAVIS PUB. CO. et al.

No. 190.

Circuit Court of Appeals, Second Circuit.

Jan. 30, 1945.

Samuel A. Fried, of New York City (Edwin Levisohn and Harry Cohen, both of New York City, of counsel), for plaintiff-appellant.

Hays, St. John, Abramson & Schulman, of New York City (John Schulman, of New York City, Bailey Stanton and S. J. Stanton, both of Chicago, Ill., and William Klein II, of New York City, of counsel), for defendants-appellees.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The defendant Ziff-Davis Publishing Company is an Illinois corporation engaged in the publication of magazines, and the defendant American News Company is a distributor of magazines including those published by Ziff-Davis. The plaintiff, which is a New York corporation and publishes magazines, brought suit in the New York Supreme Court against both defendants for an injunction, an accounting and damages, charging trade-mark infringement and unfair competition in the use of a magazine title. Ziff-Davis, which will hereinafter be referred to as the defendant, removed the cause to the District Court for the Southern District of New York because of diversity of citizenship. It answered the complaint, denying the plaintiff's allegations generally and setting up a counterclaim which charged unfair competition and sought an injunction, damages and an accounting. The court held that the plaintiff's trade-mark was invalid and that the defendant had not unfairly competed, but that the plaintiff had done so. It therefore entered an interlocutory decree dismissing the plaintiff's action against both defendants, enjoining it from continuing to compete unfairly with the defendant and referring the cause to a special master for the computation of damages and profits.

Since 1928 the plaintiff has published a monthly magazine called "Flying Aces," and in 1929 it registered this title as a trade-mark. The magazine is one of several periodicals published by the plaintiff under titles all of which include the word "Aces," and until recently it was largely or entirely given over to fictional material of various kinds. During the past two or three years its content has been altered to include considerably more factual material

of a non-technical nature in order to give the magazine a wider popular appeal among aviation enthusiasts. By extensive advertising and other promotional activities the plaintiff has built up the circulation of "Flying Aces" to a leading position in that respect among aviation fiction magazines.

Since 1927 the defendant has published a magazine devoted largely to the technical side of aviation. Until July 1940 it was sold under the title of "Popular Aviation," but in the issue of that month the magazine carried an announcement reading as follows: "Starting with the August issue, *Popular Aviation* will add the name *Flying* to its masthead. The full name will appear as *Flying and Popular Aviation*. In subsequent issues the name *Popular Aviation* gradually will be dropped, leaving *Flying* as the sole name of this publication." Immediately after the appearance of this announcement the plaintiff's attorney wrote a letter to the defendant protesting against this proposed change on the ground that it would be unfairly competitive and would infringe the plaintiff's trade-mark, but the defendant disregarded this letter and proceeded with the execution of its plan. The August issue of its magazine carried the new title in two lines, "Flying" in relatively small uncolored letters and "Popular Aviation" below somewhat more prominently displayed. In September this arrangement was reversed except for the order of the words, "Flying" being carried now in larger and colored letters and "Popular Aviation" being relegated to a less conspicuous display. In succeeding issues this sort of emphasis upon "Flying" was increased and later the magazine appeared with "Flying" in very prominent form and the expression "Including Industrial Aviation" carried below in very small letters. Beginning with the issue of June 1943, the title was "Flying" without anything else and it has continued in this form until the present time.

Apparently in an effort to combat the visual effects of this alteration in the title of defendant's magazine, the plaintiff in December 1940 changed the appearance of its own magazine. Until this time it had displayed its title in a slanting two-line arrangement of the words "Flying Aces," whereby the letters of "Flying" tapered in size toward the right while the letters of the word "Aces," printed immediately below and toward the right, progressively increased in size. Both words appeared with about equal prominence, as the judge found. But with the December issue the appearance of the title was altered, so that "Aces" was printed in letters about half the size of those in "Flying" and set in a position somewhat lower, this new arrangement having the effect of emphasizing the word "Flying" and subordinating the word "Aces." Several variations were adopted in succeeding issues, but in every instance much greater prominence was given to the word "Flying."

Starting with the issue of December 1943 the plaintiff's magazine appeared with a "kodachrome" illustration on the front cover, something which the defendant had been employing for some time, and in the words of the trial judge this was "an additional feature which contributed to a general appearance approaching that of the defendant's publication." In a trade journal the plaintiff announced at this time that "Flying Aces" had put on a "new face," and during the trial its president testified that the magazine's new appearance, which involved the change in lettering of the title as well as the use of "kodachrome" photographs, had been planned by the plaintiff since March 1940.

The trial judge found that in 1942 and 1943 the circulation of each magazine increased considerably but that in the case of "Flying Aces" the increase during this period was much greater than it had been during previous years. He found also that both magazines have much larger newsstand sales than subscription sales and that for this reason it is particularly important that the two publications should be clearly distinguishable in appearance.

In denying relief to the plaintiff the court found that the term "Flying Aces" was purely descriptive and held that the trade-mark was, therefore, invalid. He found also that neither the word "Flying" nor its use in a magazine title had acquired a secondary meaning associated with the plaintiff's publication and hence that the defendant's use of the title "Flying" would not mislead purchasers into the belief when they bought defendant's magazine that they were obtaining the plaintiff's publication. Consequently he decided that the defendant had not unfairly competed.

Moreover, he found that special prominence given by the plaintiff after December 1940 to the first word in the title of "Flying Aces" and its adoption of "kodachrome" illustrations on its front cover did

have the effect of confusing the two magazines and did lead people to buy "Flying Aces" when what they wanted and supposed they were getting was "Flying." He therefore enjoined the plaintiff from using the words "Flying Aces" in any manner which would simulate the appearance of the defendant's magazine. The decree entered imposed certain specific restrictions upon the plaintiff's use of the words and particularly required it to print "Aces" in a size of type as large as that used in the word "Flying" and to make it clearly appear that the two words together constitute the title. The decree also referred to a special master the ascertainment of damages sustained by the defendant and all profits made by the plaintiff upon its December 1943 and subsequent issues.

■ The dismissal of the plaintiff's action was right. The evidence in the record justified the finding that the term "Flying Aces" is purely descriptive. It could not, therefore, be registered as a valid trade-mark. Trade-Mark Act of 1905, § 5(b), 15 U.S.C.A. § 85(b); Warner Publication v. Popular Publications, 2 Cir., 87 F.2d 913.

■■ The decision that the defendant did not unfairly compete with the plaintiff was also right. There was support for the court's finding to the effect that the difference between the titles "Flying Aces" and simply "Flying" is, if not obscured in a misleading manner, sufficient to distinguish the two publications. Moreover, the plaintiff's magazine had a distinctive "face" of its own until the plaintiff itself began the use of "kodachrome" photographs on the cover, and this factor together with the difference in titles was amply sufficient to distinguish the publications as they appeared on newsstands to the eye of a prospective purchaser. The court's finding that the plaintiff's use of "Flying" had no secondary meaning negatives the suggestion that such a meaning could be inferred from the long-continued use of the word. New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154, 46 N.E. 386, 60 Am.St.Rep. 377; American Medicinal Spirits Co. v. United Distillers, Ltd., 2 Cir., 76 F.2d 124. And this finding is fatal to the plaintiff's allegation of unfair competition in a case like the present one. McGraw-Hill Publishing Co. v. American Aviation Associates, 73 App.D. C. 131, 117 F.2d 293; Sleight Metallic Ink Co. v. Marks, D.C., 52 F.2d 664.

■ We need not be concerned with such cases as Gannert v. Rupert, 2 Cir., 127 F. 962, which involve the infringement of trade-marks and so are not in point. Whether the publisher of a magazine is guilty of unfair competition when he adopts a portion of the title of another magazine is generally a mixed question of law and fact. Fawcett Publications v. Popular Mechanics Co., 3 Cir., 80 F.2d 194. Each individual case must be decided on its own facts, and just as is true of infringement cases (Glenmore Distilleries Co. v. National Distillers Products Corp., D.C., 23 F.Supp. 928, affirmed 4 Cir., 101 F.2d 479), the reported cases are helpful to show the general principles to be applied in reaching decision. Thus instances in which it has been held in a particular set of facts that unfair competition existed do not preclude a court from reaching a contrary conclusion in a later case having somewhat similar facts. And the rule on appeal is the same as in other types of cases tried by the judge without a jury, so that in the case at bar the trial court's finding of fact that the defendant did not compete unfairly with the plaintiff, being supported by substantial evidence and not being clearly erroneous, will not be disturbed on this appeal. James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 128 F.2d 6; Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ It was error, however, to grant the defendant a decree on its counterclaim for unfair competition by the plaintiff. In this branch of the case the judge found that there existed "a strong probability that the public would be deceived if the plaintiff were permitted to continue to print its logotype in the form in which it then appeared," that is, in December 1943. One of the findings of fact states that "the defendant has been and will continue to be irreparably damaged by the changes which the plaintiff has made," and it is inferable that by this the judge meant that the substantial increase in the circulation of "Flying Aces," which assumed large proportions beginning in 1942, was due to a supposed confusion between the two publications and to newsstand purchases of "Flying Aces" by readers who were thereby misled into the belief that what they were obtaining was "Flying." But this evidence is altogether too speculative to show that the defendant has been harmed by any palming off of the plaintiff's magazine for

186

that of the defendant. The tremendous increase in the number of aviators because of the war and the air force training program, and the heightened popular interest in aeronautics resulting from it, may quite as well account for the increased circulation of "Flying Aces." That increase might, for aught that appears, be due to causes other than popular confusion of that magazine with "Flying."

But we do not rest our decision wholly upon the lack of substantial evidence that the defendant has been harmed by the plaintiff's change in the face of "Flying Aces." We have already held that the two titles, when the difference between them is not obscured, are sufficiently distinctive to identify each magazine and to do away with any fair likelihood of confusion. Greater precautions than this a competitor is not required to take. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73. We do not find adequate support in the evidence for the conclusion that what the plaintiff did amounted to hiding the difference and thus created confusion. The arrangement of the plaintiff's title in a particular issue of the magazine, such as the issue of December 1943, is of slight value in determining whether there is confusion. Architectural Catalog Co. v. F. W. Dodge Corp., Cust. & Pat.App., 136 F.2d 1008. The defendant admits that the plaintiff has a right to change the format of its magazine and even to adopt the use of "kodachrome" photographs on its cover, and indeed there can be no question that this is true so long as the plaintiff does not do these things with the purpose and effect of deceiving prospective purchasers of defendant's magazine. On the whole we do not think the evidence justifies an inference that the title or the logotype or indeed the whole format of the front cover of its magazine could reasonably create such confusion that any palming off would be the result. The plaintiff was first to use "Flying" in its title, and mere doubts as to the fact or possibility of confusion with the later product of the defendant ought not to be resolved at its expense. Lambert Pharmacal Co. v. Bolton Chemical Corp., D.C., 219 F. 325; Skelly Oil Co. v. Powerine Co., 86 F.2d 752, 24 C.C.P.A., Patents, 790.

That part of the decree which dismisses the complaint of the plaintiff is affirmed and otherwise the decree is reversed and the counterclaim dismissed without costs to either party.