| 39 | 501 |
|-----|-----|
| 100 | 678 |

No. 2,287.

I. N. CHOYNSKI, RESPONDENT, v. WILLIAM COHEN, APPELLANT.

PRACTICE.—JUDGMENT BY DEFAULT WHERE COMPLAINT SHOWS NO CAUSE OF ACTION.—If the complaint exhibits no cause of action, a judgment by default will be reversed on appeal.

TRADE MARKS.—Terms in common use to designate a trade or occupation in connection with other words indicating that a particular class of merchandise of the same general description is specially dealt in, cannot be exclusively appropriated by any one as a trade mark.

APPEAL from the District Court of the Fourth District, City and County of San Francisco

The facts are stated in the opinion.

(T.)

*O. L. Lane,* for Appellant.

*First*—The Court below should have set aside the judgment and vacated the default on the affidavit of the defendant and the pleadings on file. (*Bidleman* v. *Kewen,* 2 Cal. 248–50; *Francis* v. *Cox,* 33 Cal. 323; *Bailey* v. *Taaffe,* 29 Cal. 422.)

*Second*—The complaint does not state facts sufficient to constitute a cause of action. (*Falkinburg* v. *Lucy,* 35 Cal. 52; 4 Abbott, 144; 2 Sandford, S. C. 599; 17 Barb. 608.)

If a complaint states no cause of action, a judgment rendered for the plaintiff on default is defective, and will be reversed on appeal. (*Abbe* v. *Marr,* 14 Cal. 210.)

*Quint & Hardy,* for Respondent, filed no brief.

CROCKETT, J., delivered the opinion of the Court, TEMPLE, J., RHODES, C. J., and WALLACE, J., concurring:

The defendant's motion to set aside the default taken against him for a failure to answer was properly denied. The excuse given in his affidavit for his omission is fully denied by the counter affidavit of the plaintiff.

The only question which remains to be considered is, whether or not the complaint states a sufficient cause of action to support the judgment. If the complaint exhibits no cause of action, even a judgment by default will be reversed on appeal. (*Abbe* v. *Marr,* 14 Cal. 210.)

The action is to recover damages for a violation of the plaintiff's trade mark, and to restrain the use of it in the future. The complaint alleges that in 1863 the plaintiff established a book, periodical and stationery store in San Francisco, and gave to his place of business the name of "Antiquarian Book Store," by which name it has ever since been known; that this name was placed upon his sign, stamped upon all articles sold by him, and used in his correspondence; that he advertised by that name in newspapers, and used it in his business transactions generally. The grievance complained of is, that the defendant has set up a rival establishment under the name of the "Antiqua-

rian Book and Variety Store." It is plain that the plaintiff could not acquire any exclusive right to use as a trade mark the terms "book store" separated from the word "antiquarian." Terms in common use to designate a trade or occupation cannot be exclusively appropriated by any one. Otherwise, only one person would have the right to designate his place of business a "book store," "tinner's shop," "drug store," "hotel," *et cetera.* It must, therefore, depend upon the effect of the word "antiquarian," as used in connection with the words "book store," whether or not the plaintiff has acquired an exclusive right to the use of these words as a trade mark. The word "antiquarian," as applied to a book store, can have no other meaning or effect than to indicate to the public that the proprietor deals in a certain class of books, to wit: ancient books, or books pertaining to antiquity. Any one reading the sign "Antiquarian Book Store" over the door would naturally expect to find there for sale either ancient books, or books treating on subjects connected with antiquity.

In any other sense the word "antiquarian" could have no significance as applied to a book store. In other words, it indicates only that a certain class of books are sold there. It could not, by even a forced construction, be made to signify that the plaintiff's business had been long established, and was of an ancient origin; for the complaint informs us that the business was established in 1863, and that it had the name of the "Antiquarian Book Store" from the beginning. It is plain that the object of the plaintiff in the use of the word "antiquarian" was simply to indicate that a particular class of books was sold there, precisely in the same sense that the words "Law Book Store," or "Medical Book Store," or "Divinity Book Store" would indicate that law, medical or religious works were for sale. If we are correct in this interpretation of the words, it is obvious the plaintiff could no more appropriate them as a trade mark than could a dry goods dealer the words "French Silk Store," or a dealer in hats the words "Felt Hat Store," or a merchant the words "Ladies' Shoe Store," in which cases the words employed would simply notify the public that a

particular class of merchandise, as contradistinguished from other merchandise of the same general description, was for sale there. In all such cases, the words employed are but an advertisement that the proprietor deals in a certain class of goods; and it would be a somewhat startling proposition to announce that the first shoe merchant who puts over his door the words "Ladies' Shoe Store" acquires the exclusive right to use these words as a trade mark. In the case of *Falkinburg et al.* v. *Lucy* (35 Cal. 52), this Court had occasion to examine, with much care, the principles which underlie this case; and without repeating here the argument to be found in the decision of that case, it will suffice to say, that upon reason and authority, not less than upon the principles decided in the case referred to, we are satisfied the plaintiff had no right to appropriate the words "Antiquarian Book Store" as a trade mark; and, consequently, that the complaint contained no cause of action.

Judgment reversed and cause remanded, with an order to the District Court to dismiss the action.

SPRAGUE, J., expressed no opinion.