SUNBEAM CORPORATION v. SUNBEAM LIGHTING CO. et al.

No. 8726.

United States District Court
S. D. California, Central Division.
March 31, 1949.

Lyon & Lyon and Reginald E. Caughey, all of Los Angeles, Cal., and John F. Mc-Canna, Rogers & Woodson, Edward S. Rogers, William T. Woodson and B. W. Pattishall, all of Chicago, Ill., for plaintiff.

Mitchell & Gold, Milton Mitchell, Seymour Gold, Mason & Graham, Collins Mason and William R. Graham, all of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

The above-entitled cause heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the plaintiff enjoining the defendants, their agents, servants, employees, successors or assigns, and all holding through them from

(a) Using the name "SUNBEAM" or any reproduction, counterfeit, copy, or colorable imitation of plaintiff's registered trade-mark "SUNBEAM" as a brand name or trade-mark for electrical appliances.

(b) Using the name "SUNBEAM" or any reproduction, counterfeit, copy or colorable imitation thereof in their business style or in any way in connection with the production and sale of electrical appliances.

(c) Using the name "SUNBEAM" or any reproduction, counterfeit, copy or colorable imitation thereof in any manner whatsoever in connection with the manufacture, sale, or offering for sale of electrical appliances.

(d) Doing any act or thing calculated to induce the belief that the defendants, or their products, are in any way connected with the plaintiff or its products.

Damages and/or accounting of profits are disallowed.

Costs to the plaintiff.

Findings and Judgment to be prepared by counsel for the plaintiff under Local Rule 7.

COMMENT.

This action for trade-mark and unfair competition involves the registered trade-mark "SUNBEAM" which the plaintiff has used for a large variety of electrical products and appliances, the earliest registration of which dates to August 2, 1921. Since February 8, 1946, the plaintiff has used, nationally, "SUNBEAM" as a part of its corporate name. Plaintiff distributes its products, on a nation wide scale, through 800 distributors. These products, to which the trade-mark attaches, range from shavers to lawn mowers. The defendants, latecomers in the field, are a California partnership doing business under a fictitious name, certificate of which was filed on January 30, 1945, and are engaged in the manufacture and distribution of fluorescent lighting fixtures and lamps.

A full consideration of the facts and law in the case leads me to the conclusion that the mark of the plaintiff, "SUNBEAM", is valid, and that the defendants have been guilty of both infringement and unfair competition.

The only unusual feature which this case presents is that the evidence on the part of the plaintiff does not stand out in bold con-

tradiction to that of the defendants. Plaintiff based its case on, and directed its evidence to, the proposition that the word "SUNBEAM" has for so many years been so associated with its products, that in the mind of the average buyer or prospective customer, "SUNBEAM", in the electrical field, means a product manufactured by the plaintiff. Dealers in electrical equipment, people in every walk of life, college students, who were subjected to scientific tests and others testified that "SUNBEAM" spelled to them the products of the plaintiff. The testimony of the defendants was directed to proving that, in the minds of the segment of the electrical industry with which they were dealing,—engineers, architects and electrical contractors, who install or specify flourescent lighting systems and use the lamps manufactured by the defendants,—there is no confusion.

■ In following this course, the defendants frankly stated that they were endeavoring to bring themselves within my ruling in Palmer v. Gulf Publishing Co., D.C.Cal. 1948, 79 F.Supp. 731. But I think they have misread the case. In that case, no actual confusion was shown. In disposing of the matter, in ruling that the trade-mark "WORLD PETROLEUM" is not infringed by "WORLD OIL" as the designation of a magazine, I pointed to the specialized clientele to which both magazines appealed, writing:

"These observations are of particular pertinency to a case of this character when the magazines involved are circulated not before the general public, but to a selected group in an industrial field, which is not likely to be deceived by such similarity in the designation of a magazine as is inevitable when the words are purely descriptive. And here, as will presently be shown, the external appearances of the magazines are so dissimilar that 'to the eye there is not the slightest danger of deception.'" Palmer v. Gulf Publishing Co., supra, 79 F.Supp. at page 737

I was considering the likelihood of confusion and pointed to the specialized and limited clientele as one of the factors in the case which militated against it. I did not intend to rule, and could not very well rule, under the law of the Ninth Circuit, that the mere fact that the custom of the late comer came from a limited segment of an industry is sufficient to avoid infringement. Indeed, the rule is the other way. For, if there is any principle established firmly in the law of the Ninth Circuit, and in the law of California, which must govern the unfair competition phase of the case,—it is that infringement and unfair competition may be found to exist as between non-competitive fields and products. Safeway Stores, Inc. v. Dunnell, 9 Cir., 1949, 172 F.2d 649, 656, contains this terse statement of the rule by Chief Judge Denman:

"Even assuming the absence of any competition of toilet tissues and Dunnell's covers for protection of toilet users, Stores is entitled to its injunction."

The principle lay at the foundation of the decision in Stork Restaurant, Inc. v. Sahati, 9 Cir., 1948, 166 F.2d 348. As said by the Court:

"It may well be true that a prudent and worldly-wise passerby would not be so deceived. The law, however, protects not only the intelligent, the experienced, and the astute. It safeguards from deception also the ignorant, the inexperienced, and the gullible". Stork Restaurant, Inc. v. Sahati, supra, 166 F.2d at page 359.

And it is implicit in the last decision of our Court of Appeals on the subject, Lane Bryant, Inc. v. Maternity Lane Limited of California, 9 Cir., 1949, 173 F.2d 559, and in the leading California cases which have, time and again, been referred to by our courts in disposing of these matters. See, Modesto Creamery v. Stanislaus Creamery Co., 1914, 168 Cal. 289, 142 P. 845; Sun-Maid Raisin Growers v. Mosesian, 1927, 84 Cal.App. 485, 258 P. 630; Wood v. Peffer, 1942, 55 Cal.App.2d 116, 130 P.2d 220; Winfield v. Charles, 1946, 77 Cal.App.2d 64, 70, 175 P.2d 69. All these cases adopt as the test, the effect of imitation on the average person and stress the point that the power of a court of equity may be invoked "without market competition". They do not limit the application of the rule to fanciful names. They apply it to ordinary names when they have acquired a secondary meaning, i. e., they have become so associated with a product as to create what the Restatement (Restatement, Torts, sec. 730)

calls "confusion of source" in the minds of the public. Any other rule would be unrealistic and encourage deception and fraud.

And if an ordinary cocktail bar in San Francisco can be stopped in equity from using the name of the aristocratic New York "Stork Club", a raisin concern can be protected in the use of the coined words "Sun Maid", and a creamery protected in the use of the geographic name "Modesto", it would do violence to equitable principles to deny to the plaintiff protection for the long and prior use of the name "SUN-BEAM". See my opinion in Brooks Bros. v. Brooks Clothing of California, D.C.Cal., 1945, 60 F.Supp. 442.

■ The evidence shows clearly that the adoption and use of the name by the defendants was not fortuitous. The defendants, who began business under a partnership name, which contained the names of two of the partners, suddenly and without any explanation, determined to use the word "SUNBEAM". The motivation is obvious. They were trying to capitalize upon the name which the plaintiff had made known in the electrical field through years of successful manufacturing of electrical products and their exploitation. There is in evidence deliberate imitation of the trade-mark through a scroll-like extension of the top of the letter "S" over the other letters of the word, which is characteristic, in one form or other, of the marks and labels of the plaintiff. There is also imitation through attaching the suffix "master" to one of their lighting fixtures, "LITE-MASTER", in imitation of some of the plaintiff's products, such as "MIX-MASTER", and the like. On the whole, these facts stand uncontradicted. They prompted the statement at the conclusion of the trial that, unlike other cases of this character, the court was not called upon to resolve a conflict. The only problem was whether certain principles should be given effect. And the final conclusion is that the facts in the case,—in the light of the decisions binding upon us from our own Court of Appeals and the courts of California,—compel a finding in favor of the plaintiff upon the ground that the use of "SUNBEAM" by the defendants constitut-ed both infringement of trademark and unfair competition.

By the same token, however, I am convinced that there is no evidence of actual damage, and that, in view of the delay on the part of the plaintiff in instituting these proceedings when, through its representatives, it could have learned of the use of the name, in this field, prior to the date of the notice to desist, October 17, 1947, there should be no recovery of damages.

Hence the ruling above made.